Good afternoon. Our next case is Ideal Innovations, Inc. v. United States 20-2065. Mr. Davis, are you ready to proceed? I am, Your Honor. Thank you. Okay. And you have reserved four minutes of your time for rebuttal. Is that correct? I have. All right. You may start, please. Thank you, and may it please the Court, Ahmed Davis, on behalf of Intel and Ideal Innovations. The Court of Federal Claims here made a number of errors in determining that summary judgment was proper, but the most glaring is its determination that an actual reduction to practice could not occur until a fully assembled vehicle with the armor placed on the vehicle as courts make clear that the necessity and the sufficiency of testing is a fact-laden inquiry, and whether an invention works for its intended purpose should be measured from the perspective of the inventor himself as a person of ordinary skill in the art. In this case, the Court of Federal Claims appears to have overlooked that guidance. There was uncontroverted testimony in the record from inventor Bob Coker that he believed that the invention would work for its intended purpose by the time of a March 2006 coupon fire that took place. The evidence showed- This is Judge Stahl. Is it your position that this was a legal error, or was it a-I should say, was it an error because you think there's a genuine issue of material fact that's raised by the inventor's testimony? Is that your primary argument? I think the primary argument- The first answer to your question is it's both a legal and a factual error, Judge Stahl. The primary argument that I'm making today is the factual error because there was uncontroverted testimony in the record that created a triable issue of fact that made summary judgment inappropriate. So, is your dispute with the Court's holding that it was necessary to actually test the Inferior Armor Vehicle in order to see if it worked for its intended purpose? Or, like, in other words, that it's the scope of the testing, which is a factual issue. The type of test required, that's a factual issue. And so, is that the fact question that you're disputing? Absolutely. That's correct, Your Honor. That the Court of Federal Claims, in its order of-I believe it was May 21st-circumscribed the rules for what it called the mini trial. And number four in that order was that ideal innovations would not be able to contest at the trial that there needed to be a fully assembled vehicle that met the limitations of the claims and had the armor. And that was where the factual dispute came in. Because this Court's precedents are clear, whether it's in the context of an interference of Scott v. Finney or Taskett v. Dentlinger, whether it's a jury trial such as whether it's on summary judgment with slip track systems, that the appropriate analysis has to be from the perspective of an ordinarily skilled artisan. And the only evidence of record at the time that Judge Damage issued that decision was the declaration of Mr. Coker. And Mr. Coker averred in his declaration that the March 2006 Coupon Fire satisfied him that invention would work for- Counselor, before you go further, I want to clarify something. So I thought that one of your arguments was that the Court of Federal Claims applied an erroneous legal standard for actual reduction to practice. You're not arguing that? We are arguing that as well, Judge Reina. Would you like me to address that? I can argue- Judge Stoll, before you move on, I want to ask you one other question, which is, did you let Judge Damage know that you contested his finding number four on page JA3310, which is what you were referring to earlier? We did. And specifically, the context in which that- we set it forth in our brief opposing summary judgment, what the proper standard was. And after Judge Damage issued that order, he set a telephonic conference for the parties. And during that telephonic conference, the excerpts of which appear in the record at appendix 3313 through 3331, we explained to Judge Damage, number one, that it's a factual matter. We weren't going to be able to satisfy that standard. But more importantly, that under the governing law, that wasn't necessary. Can you tell me specifically what page in that range of 3313 to 3333 you say, we think that the question of what kind of testing had to occur is a factual question. And we think there's a genuine issue of material fact that the actual test necessary does not have to be of the armored vehicle. Or that there's a genuine issue of fact that it has to be of the armored vehicle. Where is that in that range of 3313 to 3331? Your Honor, I believe that it is in the upper left-hand corner of 3315. We explained that we were planning on putting on evidence to show that it was satisfied by what Mr. Coker believed and supporting it with the testimony of Mr. Martin, the Vice President for Ceridine. Are you saying, I'm at page 3315. Are you telling me to look at page 11, in the transcript on there? I was looking at page nine, but it continues on to page 11. That's correct. Where we cite Scott V. Finney, and we cite the slip track systems case as well. And so, continuing on, Your Honor, if you look down in the bottom right-hand corner of the mini script at page 12, we're saying, so I guess we'd say that both, because issues of reduction of practice, the question of law, based on underlying issues of fact, our dispute would be on both of those fronts. I'm just wondering where you specifically, is there a specific place, and you don't have to answer right now, you can answer on rebuttal, but is there a specific place where you talk about contesting finding four on page JA3310, and specifically say that he couldn't, there's a genuine issue of material fact about the type of testing necessary. So, if you can find that for me, I'd appreciate it. Sure. Thank you, Your Honor. I will do that. And if it's okay with Your Honor, I'll try to point that out. Can I just follow up, though? You're pointing us to all this conversation on these pages that are number nine through 12 in the mini transcript. But you seem, but if you look at the bottom of page 12, Judge Danisch notes that you could have made those arguments in your papers for summary judgment, but suggests that you haven't made those arguments sufficiently. I mean, I understand your point about what's the genuine issue here, but it seems to me you're shifting, you've had shifting theories of why summary judgment wasn't proper here. And it goes from, oh, well, the effective date of the agreement was this, and it turns out you couldn't prove that date, and then various things about whether an actual test of the vehicle or not. So, I'm a little confused about, and like Giselle, I want to know exactly where you've made clear to Judge Danisch, appropriately, and in papers opposing summary judgment, that you disagreed with his point four. I appreciate that. Thank you, Judge Hughes, and I will look for that specific site. What I can tell you, Your Honor, for context is that I can appreciate why the court says it looks like the positions in opposing summary judgment may have changed. I'm not sure that I necessarily would agree with that, so much so as from a balance perspective, what it was that the Court of Federal Claims said that it was interested in, from our perspective, appeared to change. And so, when the parties first opposed summary judgment, what we said was there are factual issues in dispute related to the issue of actual reduction to practice, and the court on its own specifically said the only thing that I'm interested in right now is the specific dates in the CRADA and when the CRADA was signed. Beyond that, I don't really see any disputed issues of fact. And when did you come back specifically somewhere in writing and say that's not the only issue? Because it does seem to me that you've argued, well, we do have a dispute of fact here. We think we can prove that the reduction in practice predated the one date of testing everybody agreed happened of the full vehicle. That seemed to be the focus, and I get you may think that Judge Damage was directing you to a certain thing, but where did you preserve all these other arguments explicitly rather than leading him down the path to think you were going to prove a bunch of other things and then came back to him ultimately and said, well, we can't prove that. What you're asking for, we don't have any evidence on. It really seems to me like you've led him, if it is a genuine issue of material fact, that you've led him into this air because you haven't properly apprised him of what was needed to be decided. Sure. I appreciate that. And again, I will pull that site. Again, what I can tell you, Your Honor, is that as early as that first teleconference in October of 2019 when the Court of Federal Claims said, I want to limit this to just the issue of the date for the CRADA, we specifically identified during that hearing that there were other issues and other arguments that needed to be raised, and that's in the transcript of the hearing of appendix 3283 and the continuing one pages up to 3285. I hear that I'm now into my rebuttal time. Can I, unless the Court has further questions, I will reserve on that time. Okay. Let's move on. Mr. Hanna, you have 13 minutes if you set aside. Thank you, Your Honor. Good afternoon. Alex Hanna on behalf of Appalachian United States may please the Court. This Court should affirm the claims court properly granted summary judgment only after I3 expressly admitted an appendix 3314. It could not meet its burden of proving a first actual reduction of practice predating the CRADA. Counsel, this is Judge Hughes. Can I just get you right to the point here? Is the question of what kind of testing is required for reduction to practice a factual question or is it a legal question? Your Honor, whether an invention has actually been reduced to practice is a legal question based on subsidiary... That's not what I... Well, yeah, but that's not what I asked you. I asked you whether testing was required is a brief. You even agreed that the scope of testing required to show reduction of practice was a factual question. Your Honor, we don't think in this case it would matter because there was no testing. I get it. Can you answer the question though? Is it a factual question? Your Honor, we think that ultimately it's a legal question, but I... Okay. Okay. You're not going to answer. Let me just assume for purposes of the rest of my questions, it's a factual question. Look, I get how you're here because it does seem to me that your counsel on the other side has shifted the different issues of genuine issue of fact, but isn't there sufficient evidence of both the inventor's testimony and whatever else he points to to suggest that either the use would have known based upon the coupon testing and the weight distribution and the fact that a prototype was made that that was a reduction practice. Isn't that sufficient evidence to show a material issue of fact? No, Your Honor, for several reasons. First, the March 2006 coupon testing was simply a test of prior armor. The first patent application that led to the issuance of the time barred 540 patent, that's not a part of this appeal, was filed in August of 2006. That test happened before the filing date of that patent. It was a test of prior armor coupons. It was not a test. There is no record... Counsel, what about... Counsel, this is Judge Stoll. I'm sorry. I just want to make sure you're answering the question. I mean, we have at page A3300 in Judge Damich's order, he says that he recognizes that plaintiff's position is that something less than testing of a full vehicle is required. And he says that there's inventor testimony that the coupon testing combined with knowing the weight of the coupon and what kind of weight the commercially available vehicle could handle, that that is plaintiff's argument for reduction, the only testing that was required, that that would satisfy testing for the intended purpose or the scope of testing required. Why doesn't that raise a genuine issue of material fact? Your Honor, because in this case, testing is required under the common sense... Yeah, this is testing. You could say you need a specific kind of testing of the vehicle, but you can't just tell me that testing is required. Here, this is the plaintiff's position is that testing of the coupon and knowing the weight of the coupon armor, as well as, you know, how much the commercially available vehicle could handle in terms of weight and still be mobile, that that would be enough to satisfy the testing required to show that the invention works for its intended purpose. Again, it's at page A3300. And I want to know why that doesn't raise a genuine issue of material fact regarding testing to show that there was testing before the credit date to show that it worked for its intended purpose. Because, Your Honor, that test was not a test of the claim's unique configuration of the armor on the vehicle. That is what the claims are directed to. The claims court correctly found at Appendix 3305 that the intended purpose of the invention is to protect soldiers against various kinds of explosives while preserving the mobility of the vehicle. So that fact that Your Honor raises fails for two reasons. Number one, that was not a test of the unique configuration of armor that the inventor touted. It was also not a test involving the mobility of the vehicle. And frankly, Mr. Kotcher's after-the-fact 2018 declaration was not only not contemporaneous with his claims after a reduction of practice date, it was also uncorroborated, Your Honor. So it cannot create a genuine disputed issue of material fact. And I'm having a little bit of a hard time with your corroboration point because it seems undisputed to me that the March 2006 test occurred. Right? And so the rule of corroboration is a rule of reason. And so I'm supposed to look and see whether under a rule of reason there's some corroboration for what he says about what everybody agrees the March 2006 test of armor occurred. That seems pretty well corroborated. So I guess what you're saying is because he went beyond that and said, hey, once I knew the armor worked and I knew how much weight the commercially available vehicle could handle, I would know that the invention would work for its intended purpose. You're saying that specific narrow part is not corroborated. It's not, Your Honor. And the rule of reason articulated or discussed in Scott v. Finney also says that it did not do away with the testing requirement. Do you agree that the damage didn't deal with corroboration, the rule of reason? Instead, he said as a matter of law, the testing that's required must be of the vehicle with armor on it. Right? The testing, Judge Damage correctly found that the testing must be of the claimed armored vehicle with the armor on it after he correctly found as a matter of law what the intended purpose was. And this court reasoned in slip track that in some cases where the invention is particularly complicated, the absence of testing may be sufficient in and of itself to justify a grant summary judgment. That's exactly what happened here. They don't have any testing evidence. It does not exist because the vehicle was never tested as a complete vehicle with the unique claims configuration of armor, Your Honor. And so there's... We asked you the question, Judge, who has asked you earlier. Do you agree that the scope of testing required to show that a claim works for its intended purpose is a question of fact? The question ultimately, Your Honor, is a question of law. And while it might be a question of fact, it would not matter in this case because that evidence does not exist. All of their discovery requires... Counsel, this is Judge Cheese again. Let me try it this way. Is your position that the court's intended purpose finding, which is a legal conclusion, is correct that the invention is a vehicle with mobility and protection requirements and that the factual assertions regarding the testing of that invention are insufficient to create a genuine issue of fact of whether the vehicle itself would satisfy the intended purpose of the invention because the only way to show that the vehicle with mobility and protection would work is to test the actual vehicle as opposed to test pre-existing armor and just do weight calculations? I believe that's correct, Your Honor. A material issue of fact is one that might affect the outcome of the suit. In a genuine dispute, it doesn't exist unless the evidence is such that a reasonable fact finder could return a verdict for the non-moving party. So you're correct, Your Honor, that the evidence that they point to cannot possibly create a genuine disputed issue of material fact. The only evidence we have are the armor coupon test of the prior art armor and the inventor's testimony. And I guess we have some evidence that the armor was actually put on a vehicle and looks like it met the weight requirements. That evidence, Your Honor, I believe Your Honor is referring to the photographs. Those are unauthenticated, uncorroborated photographs. We don't have any expert testimony or the like from the patentees suggesting that this would have worked for its intended purpose. That's correct, Your Honor. No such evidence exists in the record. Okay, anything else? Yes, Your Honor. The appellants argue that the court abused its discretion in denying discovery under 5060, but the court of federal claims correctly reason that it's not enough that the plaintiff may have constructed the patented vehicle before the for its intended purpose. And I do recognize that a court may reject a request for discovery under Rule 5060 if what is sought has no chance of leading to the denial of summary judgment. That is precisely the situation here. Specifically on June 18, 2019, I3 served discovery only on the defendants, not on any third party, including Sarah Dye. I3's discovery was not directed to test evidence. On October 4, 2019, the claims court ordered a mini trial on among other things the effective date of the credo, but stated in a follow-on order just three days later, it will permit, and I quote, broader discovery if the parties believe it to be necessary. I3 never sought broader discovery. During an October 9, 2019, status conference, the claims court expressly expressed it did not want to open this discovery up to everything that may be relevant to the credo, but just what is relevant to the effective date. I3 did not nor did I3 request discovery to be broadened in light of the claims court's invitation. To the contrary, I3 concurred with the CFC and stated, exactly, Your Honor, that's exactly our intention as well, given your guidance, to focus on the effective date of the credo and the execution of it. That's at Appendix 3268 to 3269. After a brief discovery period on March 16, 2020, pursuant to the parties' joint stipulation regarding mini trial facts and motion for an order staying discovery again, on March 13, 2020, the claims court issued an order staying discovery regarding the mini trial issues previously identified by the court. Here, the claims court did not deny I3 an opportunity for discovery, nor did it abuse its discretion. And finally, the appellants make an argument regarding the 2006 REF contract. First, I3 waived its novel argument concerning the REF contract. That argument was never properly raised in the claims court. I3's motion to file a certified Appendix 3217 to 3222 was denied at 3251, so its argument was never properly before the claims court nor considered. Now, for the credo, the credo cannot transfer rights in the patents to the government. According to I3, because the earlier REF contract did not address patent rights, the claims court should not have reached the issue of whether the credo provided a license to the government. But as this is a court of review, it does not consider new arguments in the first instance not raised below in the claims court. Notwithstanding I3's waiver, its novel argument fails. The credo is a standalone agreement with a merger clause. I3's argument relating to I3's affirmative intent is misplaced. I3 does not argue that a contractual term is ambiguous to perhaps justify reference to a contracting party's intent or extrinsic evidence. Thank you, Your Honors. Yes, thank you. Mr. Neal, thank you, Your Honors. May it please the court, Senator Pro Tem Urof Oshkosh. I have a brief two minutes, so let me get started, if you will. To answer a lot of the questions about what kind of a test the requirement for testing is, this court appears to treat that as an objective standard, especially in Scott v. Fain. The language is the testing requirement depends on the facts of each case with the court guided by a common sense. The court applies a reasonable standard, as Scott's case says as well. It also says in each case the court examined the record to discern whether the testing in fact demonstrated a solution to the problem intended to be solved by the invention. In slip track, this court stated, in some cases where the invention is particularly complicated, the absence of testing may be sufficient in and of itself to justify a grant of summary judgment for lack of reduction to practice. So it seems to be treated, and there's language about it being an issue of fact, but it seems to be treated by the court as an objective standard, especially when there is a complex invention, as we have here, not by anybody's admission except the appellants themselves. The appellants admit that this is an inherently dangerous nature of an armored vehicle at appendix 456 and 2559. There are many variables associated with shooting EFPs at unique angles at brand new armored vehicles at appendix 3406. Counsel, I just want to ask you, do you view the scope of testing, a court's determination regarding the scope of testing required to show that an invention meets its intended purpose? That's a question of fact, isn't it? The patients say it is a quote-unquote question of fact. However, when I read these, you know, Scott and slip track, they treat it as an objective test, it seems. Well, an objective test, but it's still a question of fact. Colleagues, based on underlying facts, obviously, yes, the court takes in the facts, considers, number one, the intended purpose, which we think he's exactly right on, considers the complexity of the invention, and the more complex the invention, we believe the more to the end of the spectrum of the full test of the claimed embodiment is required. If I could just say one more thing, Your Honor, so they're all over the record saying that this is a dangerous and unpredictable invention, and there are heavy armor in some locations, low armor in other locations, and light armor in other locations at 3406. Nobody believed it would work, okay, including people in the tank industry and in the military are saying it wouldn't work, appendix 3406. This is, by definition, a complex invention with a lot of uncertainty, and when you have that type of invention, it's much more important to do a test of the claimed embodiment, and about the coupon test just sold, which you were questioning, that was a test of prior art armor, admittedly so, by the appellants. That was not a test of the claimed invention. The invention was not armor that could withstand the impact. I do understand that. I understand it. My only concern is whether there's a genuine issue of material fact. I fully understand your position, and I know what the test was about. I've read the record. Thank you. Thank you. Do I still have any time? You can wrap it up, sir. Okay, I'll just wrap it up, Your Honor. According to Scott Birch's training, what matters for testing is that it demonstrated a solution to the problem intended to be solved by the invention. The invention here is a vehicle with heavy armor in only certain locations. That was not tested to be able to protect the occupants until March of 07 under the cradle. Any testing done before that, you don't know if the vehicle is going to protect the occupants. You may know that the armor coupon itself may withstand a VFP being shot directly at it, but that's not their invention. Their invention is taking that armor and putting it on a vehicle, and then you have to test that vehicle to see if that vehicle will protect the occupants and remain mobile. That was not done until March of 07, Your Honors. Okay. All right. We thank you for that argument. Mr. Davis, you have four minutes. Thank you very much. Let me just quickly respond to what Mr. Tamburo just said, my esteemed colleague on the other side. Unfortunately, none of what he just articulated is actually in the record. The balance never had an opportunity to respond to. That's part of the reason why we believe there was a fundamental error with respect to the Rule 56D ruling. There was a factual issue here, but at the very least, the parties should have been able to take that discovery to oppose summary judgment. Now, with respect to the questions that Judge Hughes and Judge Stoll asked during my initial argument, unfortunately, I see in looking at the joint appendix that the specific pages of our summary judgment brief that articulated that summary judgment standard were not submitted, including in the joint appendix itself. The pages that were excerpted are at 2802 and 2805 and continuing on to 2812. Those are the portions of the brief identifying the factual dispute. I'll make a representation to the court that in the legal section, we addressed that issue, but I acknowledge that it was not in the joint appendix that was submitted to the court. This is Judge Stoll. The question was whether you told Judge Damage that that finding regarding the scope of testing is a factual finding that you dispute and that should preclude summary judgment. I'm concerned because you said it's in the legal section, which doesn't make a lot of sense. I'm sorry. If that's the case, I misunderstood your question. I apologize, Judge Stoll. I thought the question was whether we had apprised Judge Damage that there was a legal requirement about whether there needed to be a full and complete embodiment. That's what I understood your question to be. I apologize. I'm concerned that maybe you didn't tell Judge Damage that you thought there was a genuine material fact that precluded him from finding that an actual test is necessary to prove that the prototype of the armored vehicle works for 3311. I want to know if you contested that and let him know that you thought there was a genuine issue of material fact. Sure. For that, I would direct the court to the joint stipulation that was filed at appendix 3288 to 3293, and in particular at page 3292 at the top where the plaintiffs say that we expect to demonstrate that genuine issues of dispute material fact exist. Did you say 3292? I did, Your Honor. I don't have that. I don't. Well, wait. Let me look. Maybe I do. I'm sorry. Okay. I'll try to find that. Sure. Thank you. I was looking at the wrong volume. Thank you. That's right. In the interest of time, Your Honor, at the top of appendix 3292, we did identify for the court that there were these factual issues, and that is something that was submitted before the court order granting summary judgment. The last point that I'll just raise is this one. Mr. Tamboro made an argument there. Sorry, Mr. Davis. Mr. Davis, this is Judge Hughes. I just want to follow up on this because this paragraph is helpful. Your view is that there is a genuine issue of fact of whether the evidence you submitted shows that the vehicle would work for its intended purpose, right? Yes, we do, Your Honor. Is this the evidence you're talking about? Is there anything else other than this evidence of the armor coupon testing, the declaration, and the fact that there looks like through photos that a vehicle was built? Is there anything else we should be looking at to determine whether it's a genuine issue of fact? Yes. So, there's that. There is an additional email from Gary Camberland, one of the people that was working on behalf of Ideal Innovations in the record at 2490 to 2491 that goes to the issue of mobility that the court raised. Any other questions? I heard the bell go off, Mr. Davis. So, I think you're out of time. I'll let you conclude. I appreciate the time, Your Honor. In conclusion, I think what we'd say is that in this particular instance, at the end of the day, there was no facts before the court that led to summary judgment. And so, this case is very much like slip track systems in that regard, and summary judgment is not appropriate. Okay. We thank all the parties for their arguments this morning. The two cases we heard arguments on are now submitted, and that concludes arguments for this morning. The Honorable Court is adjourned until tomorrow morning at 10 a.m.